UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

M-CW 0788

JERMAINE GARDNER,

Petitioner,

-against-

BRIAN FISHER, Superintendent of Sing Sing Correctional Facility,

Respondent.

AFFIDAVIT IN OPPOSITION TO PETITION FOR A WRIT OF HABEAS CORPUS

05 CV 6096 (NG) (JMA)

STATE OF NEW YORK )
) SS:
COUNTY OF KINGS )

MARIE-CLAUDE P. WRENN, being duly sworn, deposes and states as follows:

1. I am an Assistant District Attorney of counsel to Charles J. Hynes, the District Attorney of Kings County. I am admitted to practice in New York State and before this Court.

2. By agreement with the Attorney General of the State of New York, the District Attorney of Kings County will represent respondent in the above-captioned matter.

3. I am submitting this affidavit in opposition to the pro se application, dated December 22, 2005, of petitioner [hereinafter "defendant"] for a federal writ of habeas corpus. I affirm the following statements upon information and belief

based upon the records and files of the Kings County District Attorney's Office, the records and files of the New York Supreme Court, Kings County, and the records of the New York State Department of Correctional Services.

4. On January 2, 2001, at approximately 5:30 p.m., defendant approached Byron Wynn on the walkway between the apartment buildings at 410 and 414 Sutter Avenue in the Brownsville section of Brooklyn. Defendant spoke briefly with Wynn, pulled out a gun, and fired the gun twice into Wynn's chest, killing him. Defendant then fled into 414 Sutter Avenue.

5. For these acts, defendant was charged, by Kings County Indictment Number 763/01, with two counts of Murder in the Second Degree (N.Y. Penal Law §§ 125.25[1], [2]), Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03[2]), and Criminal Possession of a Weapon in the Third Degree (N.Y. Penal Law § 265.02[4]).

6. In March 2002, defendant's jury trial began in New York Supreme Court, Kings County. The prosecution presented witnesses Magic Allen, Anastasia Hill, Christopher Fraser, Booker Wynn, Dr. Marie Macajoux, Police Officers Christopher Dietrich and Steven Rinaldi, and Detective Philip Palmeri.

7. Magic Allen testified at trial that she knew both defendant and Wynn, that she observed Wynn and defendant

together from her window at 414 Sutter Avenue at the time of the shooting, that defendant was wearing a tan down jacket with a fur-trimmed hood, and that she saw defendant run into her building with a gun after the shooting (184-85, 191, 195, 197-203, 250-51, 264-67).[1] Anastasia Hill testified at trial that while sitting in a car nearby, she saw a man in a tan jacket with a fur-trimmed hood shoot Wynn on the walkway in front of 414 Sutter Avenue and run into 414 Sutter Avenue (Hill: 282-86). Postal Worker Christopher Fraser testified at trial that while distributing mail in the lobby of 414 Sutter Avenue, he heard gunshots and saw a man in a tan down jacket with a fur-trimmed hood run into the lobby with his hand under his armpit as if concealing something in his hand (Fraser: 92-96, 103-04).

8. On March 26, 2002, the jury found defendant guilty of intentional second-degree murder (N.Y. Penal Law § 125.25[1]) and second-degree criminal possession of a weapon (N.Y. Penal Law § 265.03[2]).

9. On May 15, 2002, defendant appeared for sentencing and was adjudicated a second violent felony offender. See N.Y. Penal Law §§ 70.02, 70.04; N.Y. Crim. Proc. Law § 400.15.

[1] Numbers in parentheses indicate citations to pages of the trial transcript, dated March 19-21, and March 25-26, 2002 (Respondent's Exhibit A, Parts 2-6). Names of witnesses whose testimony is cited precede page numbers.

Defendant was then sentenced, as a second violent felony offender, to a prison term of twenty-five years to life for Murder in the Second Degree (N.Y. Penal Law § 125.25[1]), and a concurrent prison term of fifteen years for Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03[2]).

10. Defendant appealed from his judgment of conviction to the New York Appellate Division, Second Judicial Department (hereinafter "the Appellate Division"). Defendant raised two claims on appeal: (1) that the prosecution failed to prove defendant's identity as the shooter by legally sufficient evidence, and that the verdict was against the weight of the evidence; and (2) that defendant was denied a fair trial under Brady v. Maryland, 373 U.S. 83 (1963), by the delayed disclosure of a statement of eyewitness Anastasia Hill shortly after the murder, naming a man called "Millie-Moe" as the shooter and by the court's failure to charge the jury that the prosecution had not disclosed the statement before trial.

11. On July 16, 2004, the People filed a responding brief in the Appellate Division.

12. By order dated October 22, 2004, the Appellate Division unanimously affirmed defendant's judgment of conviction. People v. Gardner, 12 A.D.3d 525, 785 N.Y.S.2d 462 (2d Dep't 2004). The Appellate Division found both of

defendant's claims unpreserved for appellate review, citing New York Criminal Procedure Law section 470.05(2) and People v. Gray, 86 N.Y.2d 10, 629 N.Y.S.2d 173 (1995). Gardner, 12 A.D.3d at 526, 785 N.Y.S.2d at 462-63. The Appellate Division found, in the alternative, that both claims were without merit. The Appellate Division concluded that there was legally sufficient evidence to establish defendant's guilt beyond a reasonable doubt, and that the verdict was not against the weight of the evidence. Id. Furthermore, the Appellate Division found that Hill's statement was turned over to defendant before opening statements, that defendant had the opportunity to use the report in meaningful fashion in the cross-examination of the People's witnesses or as evidence in his case, and that there was no indication that earlier disclosure would have led to a different outcome. Id.

13. By letter dated November 29, 2004, defendant applied for leave to appeal to the New York Court of Appeals.

14. By order dated January 4, 2005, defendant's application for leave to appeal further to the New York Court of Appeals was denied. People v. Gardner, 4 N.Y.3d 763, 792 N.Y.S.2d 7 (2005) (Kaye, C.J.). See N.Y. Crim. Proc. Law §§ 450.90, 460.20.

15. In his petition, dated December 22, 2005, now before this Court, defendant raises two claims that he previously raised on his direct state appeal in the Appellate Division: (1) that the verdict was against the weight of the evidence because of alleged discrepancies in the eyewitness testimony regarding the shooter's identity; and (2) that defendant was denied a fair trial when the trial court failed to properly address his Brady claim relating to Hill's statement and declined to issue sanctions, including a jury instruction.

16. Defendant's habeas petition should be denied. Defendant's claim concerning the weight of the evidence fails to present a federal question, and to the extent that defendant is also contending that the evidence was legally insufficient, that claim is barred on procedural grounds. Defendant's claim concerning the delayed disclosure of Anastasia Hill's statement is likewise procedurally barred. In any event, neither of defendant's claims warrants federal habeas corpus relief.

17. In compliance with the Court's order to show cause, dated April 28, 2006, the following documents are being submitted to this Court with this response: (a) the transcripts of defendant's state court voir dire, dated March 18, 2002, the trial, dated March 19-26, 2002, and the sentence, dated May 15, 2002 (Respondent's Exhibit A, Parts 1-7); (b) defendant's brief

to the Appellate Division (Respondent’s Exhibit B); (c) the People’s brief to the Appellate Division (Respondent’s Exhibit C); and (d) defendant’s application for leave to appeal to the New York Court of Appeals; and the letter of Chief Judge Kaye denying leave to appeal to the New York Court of Appeals (Respondent’s Exhibit D).

WHEREFORE, and for the reasons stated in the accompanying Memorandum of Law, the instant petition for a writ of habeas corpus should be summarily denied.

Marie-Claude P. Wrenn
Assistant District Attorney
(718) 250-2530

Sworn to before me this
_____ day of _________

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

M-CW 0788

JERMAINE GARDNER,

Petitioner,

-against-

05 CV 6096 (NG) (JMA)

BRIAN FISHER, Superintendent of Sing Sing Correctional Facility,

Respondent.

MEMORANDUM OF LAW

STATEMENT OF FACTS

Respondent relies on the statement of facts included in the People's Appellate Division Brief [Respondent's Exhibit C] at 2-22.

POINT I

DEFENDANT'S WEIGHT-OF-THE-EVIDENCE CLAIM IS A QUESTION OF STATE LAW WHICH IS NOT COGNIZABLE ON HABEAS REVIEW. TO THE EXTENT THAT DEFENDANT IS ALSO CLAIMING THAT THE EVIDENCE OF HIS GUILT WAS LEGALLY INSUFFICIENT, HIS CLAIM IS PROCEDURALLY BARRED. IN ANY EVENT, DEFENDANT'S CLAIM IS MERITLESS (Responding to Defendant's Petition, Ground One).

Defendant's claim in Ground One that the verdict was against the weight of the evidence and that the testimony of certain prosecution witnesses at his trial was incredible, fails to present a question for federal habeas review. It is well-settled habeas jurisprudence that a federal court reviewing a claim of insufficient evidence raised in a habeas petition is not free to make credibility judgments about the testimony presented at trial or to weigh conflicting testimony. Marshall v. Lonberger, 459 U.S. 422, 435 (1983) ("28 U.S.C. § 2254[d] gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them"); see Fagon v. Bara, 717 F. Supp. 976, 979 (E.D.N.Y. 1989); accord, Henry v. Scully, 918 F. Supp. 693, 708 (S.D.N.Y. 1995) (witness credibility to be

resolved by jury and not to be redetermined by federal courts in habeas corpus proceeding), aff'd, 78 F.3d 51 (2d Cir. 1996); see also Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) (assessments of weight of evidence or credibility of witnesses are for jury); Underwood v. Kelly, 692 F. Supp. 146, 150 (E.D.N.Y. 1988) (federal courts precluded in habeas proceedings from reevaluating witness credibility), aff'd without op., 875 F.2d 857 (2d Cir.), cert. denied, 493 U.S. 837 (1989). Therefore, defendant's claim in Ground One is not cognizable on habeas review.

Furthermore, habeas relief is not warranted simply to correct errors of state law. See 28 U.S.C. § 2254(d); Estelle v. McGuire, 502 U.S. 62, 68 (1991); Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir. 2002). Thus, "federal courts are not forums in which to relitigate state trials." Barefoot v. Estelle, 463 U.S. 880, 887 (1983). In determining that the verdict was not against the weight of the evidence, the Appellate Division was exercising its power under state law. See People v. Gardner, 12 A.D.3d at 526, 785 N.Y.S.2d at 462-63 (citing N.Y. Crim. Proc. Law § 470.15[5]). The question of whether the verdict was against the weight of the evidence is an issue of state law which is not cognizable on federal habeas review. See Nelson v. Sears, No. 05 Civ. 10341 (LAP) (AJP),

2006 U.S. Dist. LEXIS 13220 at *28-29 (S.D.N.Y. Mar. 28, 2006) (weight-of-the-evidence claim not cognizable on habeas review); Almonte v. Lape, No. 05 Civ. 1995 (KMW) (GWG), 2006 U.S. Dist. LEXIS 13799 at *31 (S.D.N.Y. Mar. 30, 2006) (claim regarding weight of evidence was not cognizable on federal habeas review because it was purely state law claim that did not present a federal constitutional issue); Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) (same).

Even if defendant's weight-of-the-evidence claim is viewed as an extension of defendant's legal insufficiency claim, habeas relief is still not warranted. See Pratt v. Upstate Correctional Facility, 413 F. Supp. 2d 228, 238 (W.D.N.Y. 2006); Davis v. McLaughlin, 122 F. Supp. 2d 437, 441 (S.D.N.Y. 2000).

First of all, defendant's claim that the evidence was legally insufficient to support his conviction is procedurally barred from habeas review. In reviewing defendant's claim of legal insufficiency on his direct appeal, the Appellate Division stated that "defendant's contention that the evidence at trial was legally insufficient to establish his guilt is unpreserved for appellate review," citing New York Criminal Procedure Law section 470.05(2). Gardner, 12 A.D.3d at 526, 785 N.Y.S.2d at 462.

Defendant's failure to preserve his claim at trial constituted a state procedural default that bars review of his claim in this Court. As the Second Circuit has noted:

> Because of comity and federalism concerns and the requirement that States have the first opportunity to correct their own mistakes, federal habeas courts generally may not review a state court's denial of a state prisoner's federal constitutional claim if the state court's decision rests on a state procedural default that is independent of the federal question and adequate to support the prisoner's continued custody.

Epps v. Commissioner of Correctional Servs., 13 F.3d 615, 617 (2d Cir.), cert. denied, 511 U.S. 1023 (1994) (citing Coleman v. Thompson, 501 U.S. 722, 731-32 [1991]).

Here, the state court's reliance on a state court procedural rule was explicit and unambiguous. See Coleman v. Thompson, 501 U.S. at 750. New York's contemporaneous objection rule, codified in New York Criminal Procedure law section 470.05(2) constitutes an independent and adequate state ground for decision, precluding federal habeas review.[2] See Rodriguez v. Schriver, 392 F.3d 505, 511 (2d Cir. 2004); Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999); Stallings v. Woods, No. 04 CV

[2] While federal courts will consider a petitioner's claim despite procedural default if the petitioner can demonstrate cause and prejudice attendant to the procedural default or a fundamental miscarriage of justice resulting from the claimed error, defendant here has not alleged, much less demonstrated, any of these factors. Hence, he is not entitled to federal review on these grounds. See Epps, 13 F.3d at 617-18 n.1.

4714 (RLM), 2006 U.S. Dist. LEXIS 22434 at *22-25 (E.D.N.Y. Mar. 27, 2006). See also People v. Gray, 86 N.Y.2d 10, 20, 629 N.Y.S.2d 173, 175-76 (1995) (legal sufficiency challenges made only on generalized grounds at trial were insufficient to preserve claim that there was legally insufficient evidence to prove specific element of crime).

Although the Appellate Division also ruled on the merits of this claim, Gardner, 12 A.D.3d at 526, 785 N.Y.S.2d at 462, this does not eliminate the procedural bar. In Harris v. Reed, 489 U.S. 255 (1989), the Supreme Court stated that federal habeas review of a claim is precluded, even though a state court has considered the merits of the claim, "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision." Id. at 264 n.10. The Supreme Court explained:

> [A] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.

Id. (emphasis in original); see also Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002); Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996) (federal habeas review foreclosed where state

court expressly relied on state procedural ground, even though state court made alternative ruling on merits of federal claim), cert. denied, 520 U.S. 1108 (1997); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (same) (per curiam). Therefore, to the extent that defendant is claiming that the trial evidence was legally insufficient to prove his guilt, this issue is procedurally barred from habeas review.

In any event, defendant's claim of constitutional error is meritless. The prosecution proved all the elements of defendant's guilt of intentional second-degree murder beyond a reasonable doubt, and the Appellate Division's rejection of defendant's claim was not contrary to, and did not involve an unreasonable application of Supreme Court precedent.

Because the Appellate Division also rejected defendant's claim on the merits, the deferential standard applicable to defendant's habeas petition under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), applies to review of defendant's claim. See 28 U.S.C. § 2254(d)(1); Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). Under 28 U.S.C. § 2254(d)(1), a habeas petition shall not be granted based on a claim that was "adjudicated on the merits" in a state court proceeding unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Under AEDPA, federal courts "must give the state court's adjudication a high degree of deference." Yung v. Walker, 341 F.3d 104, 109 (2d Cir. 2002); Bell v. Cone, 535 U.S. 685, 693-94 (2002).

A state court decision will violate the "unreasonable application" clause if, while identifying the correct governing law, the state court "unreasonably applies it to the facts of the particular state prisoner's case." See Williams v. Taylor, 529 U.S. 362, 407 (2000) (O'Connor, J.). Under the "unreasonable application" clause, a federal habeas court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the state court's application must be unreasonable. Id. at 411; see also Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) ("[s]ome increment of incorrectness beyond error is required" for determination that state court decision involved unreasonable application of federal law, though "the increment need not be great").

In this case, under well-settled Supreme Court precedent, defendant's challenge to the legal sufficiency of the evidence

cannot succeed if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). Thus, a defendant necessarily carries a "very heavy burden" to show that his conviction, upheld in state courts, should be overturned on the ground of legal insufficiency. Fama v. Commissioner of Correctional Servs., 235 F.3d 804, 811 (2d Cir. 2000) (citing United States v. Soto, 716 F.2d 989, 991 [2d Cir. 1983]); Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir.), cert. denied, 515 U.S. 1136 (1995).

The Jackson inquiry "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993) (emphasis in original); see also United States v. Ciocca, 106 F.3d 1079, 1084 (1st Cir. 1997) ("To uphold a conviction, the court need not believe that no verdict other than a guilty verdict could sensibly be reached, but must only satisfy itself that the guilty verdict finds support in 'a plausible rendition of the record.'") (citations omitted). Viewing the evidence in the light most favorable to the prosecution, the reviewing court must decide whether the conviction is "so totally devoid of

evidentiary support that a due process issue is raised." Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994) (quoting Mapp v. Warden, 531 F.2d 1167, 1173 n.8 [2d Cir.], cert. denied, 429 U.S. 982 [1976]).

Defendant must prove that his constitutional rights have been violated by a preponderance of the evidence. Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997). However, defendant has failed to meet this burden. His claim is meritless.

Here, the Appellate Division's rejection of defendant's claim was not contrary to, and did not involve an unreasonable application of, Supreme Court precedent. See 28 U.S.C. § 2254(d)(1). In finding defendant's claim to be without merit, the Appellate Division cited People v. Contes, 60 N.Y.2d 620, 467 N.Y.S.2d 349 (1983), which in turn cites Jackson v. Virginia, 443 U.S. 307, 319 (1979) as the correct legal standard. See People v. Contes, 620 N.Y.2d at 621, 467 N.Y.S.2d at 349-50; People v. Gardner, 12 A.D.3d at 526, 785 N.Y.S.2d at 463.

When it considers the sufficiency of the evidence supporting a state conviction, a "federal court must look to state law to determine the elements of the crime." Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999), cert. denied, 528 U.S. 1170 (2000). Under New York law, a person is guilty of

Murder in the Second Degree when "[w]ith intent to cause the death of another person, he causes the death of such person or of a third person." N.Y. Penal Law § 125.25[1].

Under the New York Penal Law, "A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct." N.Y. Penal Law § 15.05.

Here, the evidence of defendant's identity as the person who shot Byron Wynn was reliable and persuasive for the reasons set forth in Respondent's Appellate Division Brief (Respondent's Exhibit C at Point I). Magic Allen knew the victim well, as he was the father of two of her children (Allen: 191). Allen had known defendant since childhood and would greet defendant on sight (Allen: 187-90, 247). Allen was also friendly with defendant's brother, who was called Millie-Moe, knew what Millie-Moe looked like, and had known him since she was ten or eleven years old (Allen: 248-49, 260-61).

Allen testified that she saw defendant with some other men in the lobby of her building at 414 Sutter Avenue shortly before the shooting, that defendant was wearing a tan down jacket with a fur-trimmed hood, and that the hood was down at that time (Allen: 187, 199-200). Standing in the hallway of Allen's

building and using Allen's telephone, defendant spoke with Byron Wynn, and then defendant returned the telephone to Allen (Allen: 192-93). Afterwards, from her ground-floor apartment window, Allen saw defendant, wearing the same tan jacket, speaking to Wynn on the walkway in front of 414 Sutter Avenue (Allen: 198-201, 263). Allen heard gunshots, and defendant ran towards Allen as she was looking out the window (Allen: 199). Defendant's hood came off as he ran, and Allen saw defendant's face and the black handgun he was holding in his right hand (Allen: 201-03, 264). Defendant looked at Allen from a distance of only four feet (Allen: 202). Defendant then entered 414 Sutter Avenue (Allen: 202, 264).

Magic Allen was unwavering in her identification of defendant as the shooter of Byron Wynn. Allen identified defendant in her statement to Detective Palmeri on January 3, 2001, in her statement at the District Attorney's Office on January 11, 2001, at the lineup on February 23, 2001, and in court at trial (Allen: 203, 211-13, 217).

From her apartment window, Allen had a clear, unobstructed view of the incident, which lasted at least five minutes (Allen: 198-99). Allen was concerned about Byron Wynn, the father of two of her young children (Allen: 191). As she watched the incident, her attention was alert and focused. She was able to

observe defendant from a distance of fifteen to eighteen feet, and again from a distance of four feet as he paused momentarily and then he fled into her building with his face and hand exposed (Allen: 198, 202, 205, 223, 237). As Allen knew both defendant and his brother, Millie-Moe, the jury could infer that she would not have mistaken one for the other.

Furthermore, the testimony of the postman, Christopher Fraser, corroborated Allen's testimony. Fraser saw a man with the same tan, fur-trimmed, hooded winter jacket run into the lobby of 414 Sutter Avenue only minutes after two gunshots were fired (Fraser: 94). Although Fraser did not see a gun, the man was hiding his right hand under his armpit (Fraser: 95-96, 103-04).

In addition, although Anastasia Hill testified that she did not see the face of the shooter or his gun, her testimony corroborated Magic Allen's testimony in many respects. Hill described the beige or tan winter jacket with fur trim that the shooter was wearing (Hill: 283, 298). Like Allen, Hill testified that the conversation between the shooter and Wynn took place on the walkway, that only Wynn and the shooter were engaged in that conversation, that the conversation lasted about five minutes, that there were only two gunshots, and that the shooter then ran into 414 Sutter Avenue (Hill: 284-85, 298).

Although Detective Palmeri testified that Anastasia Hill had previously said that Millie-Moe was the shooter, Hill testified at trial that she did not see the face of the shooter, and she did not claim that Millie-Moe was the shooter. During her testimony, she flatly denied that she had previously identified Millie-Moe as the shooter, stating that Detective Palmeri had made that connection (Hill: 291-92, 302-03). At trial, Hill testified that she had seen Millie-Moe earlier that same morning, wearing a similar jacket (Hill: 277, 283, 292).[3]

The jury could reasonably have concluded that Anastasia Hill was scared and impatient to leave during her first interview with Detective Palmeri, and that Hill's recantation of her statement to Palmeri or explanation for any discrepancies was credible. Therefore, Anastasia Hill's testimony was not incredible as a matter of law or unreliable.

Furthermore, defendant's assertion in Ground One that Anastasia Hill testified that defendant "was not the perpetrator" is not supported by the record. Anastasia Hill testified that she could not see the face of the man who approached Byron Wynn on the walkway (Hill: 282-83). According

[3] Allen and Hill described Millie-Moe as tall and slim. Hill testified that Millie-Moe and defendant did not look at all alike (Allen: 260; Hill: 275-78).

to Hill, the man grabbed Wynn's jacket, and she heard two gunshots go off (Hill: 282-85). She testified that she could not see the man's face and did not see anything in his hands (Hill: 283, 293, 298, 303). This is very different from testifying that the shooter was not defendant.

In any event, from Magic Allen's testimony alone, the jury could rationally have concluded that defendant's identity as the shooter had been proved beyond a reasonable doubt. Therefore, the Appellate Division's rejection of defendant's claim does not warrant federal habeas relief. The testimony of a single witness, if credited by the jury, is sufficient to establish the elements of the crime beyond a reasonable doubt. See United States v. Danzey, 594 F.2d 905, 916 (2d Cir.) (testimony of single uncorroborated eyewitness is generally sufficient to support conviction), cert. denied, 441 U.S. 951 (1979); People v. Calabria, 3 N.Y.3d 80, 82-83 (2004) (reaffirming that one witness's testimony can be enough to support conviction and that jury determines witness's credibility).

In sum, defendant is not entitled to habeas relief based upon this claim.

POINT II

DEFENDANT'S BRADY CLAIM IS PROCEDURALLY BARRED FROM HABEAS REVIEW. FURTHERMORE, THE CLAIM IS WITHOUT MERIT (Responding to Defendant's Petition, Ground Two)

Defendant's claim in Ground Two that the prosecution violated Brady v. Maryland, 373 U.S. 83 (1963) by delayed disclosure of a police report containing Anastasia Hill's statement to police and that the state trial court should have imposed a sanction for the delay is procedurally barred from federal habeas review on an independent and adequate state ground. In reviewing defendant's claim on direct appeal that the delayed disclosure of a police report summarizing an interview with Anastasia Hill constituted a violation of Brady v. Maryland, 373 U.S. 83 (1963), the Appellate Division found that the claim was "unpreserved for appellate review," citing New York Criminal Procedure Law section 470.05(2), which requires a defendant to enter a protest at trial to a claim of error in order give the trial court an opportunity to rectify any error and to preserve the claim for appellate review. See Gardner, 12 A.D.3d at 526, 785 N.Y.S.2d at 462; see generally People v. Gray, 86 N.Y.2d 10, 20-21, 629 N.Y.S.2d 173, 175-76 (1995).

At the end of jury selection when the police report containing Hill's statement was disclosed to the defense (3, 84), defendant did not object to Hill taking the stand, did not ask for a continuance, did not move for a mistrial, and did not articulate to the trial court any prejudice. Hill was brought in for defense counsel to interview, which he did, and the prosecutor presented Hill as a witness at trial (117-19, 272-74). After Hill had testified, during the charge conference, defense counsel only asked that the jury be instructed that the police report regarding Anastasia Hill's interview was turned over late to the defense (76-78, 117). Defendant did not claim any prejudice or make any motion for a mistrial.

A procedural default under New York's contemporaneous objection rule, codified in New York Criminal Procedure Law section 470.05(2), as discussed in Point I, supra, presents an adequate and independent state ground for decision that bars federal habeas review of defendant's claim, absent a showing of cause or prejudice or a miscarriage of justice. See Garcia v. Lewis, 188 F.3d 71, 76-82 (2d Cir. 1999) (discussing N.Y. Crim. Proc. Law § 470.15[2]); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (claims were barred from federal habeas review, where Appellate Division explicitly found claims were not preserved

for appellate review); see generally Harris v. Reed, 489 U.S. 255, 262 (1989).[4]

As defendant has made no showing of cause or prejudice relating to his default, and no showing of a miscarriage of justice, his procedural default cannot be overlooked. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001); Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995).

In any event, this claim is devoid of merit and does not warrant federal habeas relief. Under Brady v. Maryland, 373 U.S. 83 (1963) and its progeny, the prosecution has an affirmative duty to disclose "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. at 87; United States v. Gil, 297 F.3d 93, 101 (2d Cir. 2002); United States v. Payne, 63 F.3d 1200, 1208 (2d Cir. 1995).

This duty to disclose also encompasses impeachment evidence

---

[4] The subsequent denial, without opinion, of defendant's application for leave to appeal to the New York Court of Appeals is not a judgment and does not remove the procedural bar invoked by the Appellate Division. See Ylst v. Nunnemaker, 501 U.S. 797, 803, 805-06 (1991).

as well as exculpatory evidence. United States v. Bagley, 473 U.S. 667 (1980); Payne, 63 F.3d at 1210. The prosecution's affirmative duty exists even when there has been no specific request for disclosure made by the defense. Payne, 63 F.3d at 1208 (citing Kyles v. Whitley, 514 U.S. 419, 432-33 [1995] and United States v. Agurs, 427 U.S. 97, 108-10 [1976]).

A prosecutor is presumed to have knowledge of all information gathered in connection with the government's investigation, including information gathered by the police. See Kyles v. Whitley, 514 U.S. at 437; Payne, 63 F.3d at 1208. However, Brady and its progeny do not specify the precise timing for disclosure, and "disclosure prior to trial is not mandated." Leka v. Portuondo, 257 F.3d 89, 100 (2d Cir. 2001). What is important is "the sufficiency, under the circumstances, of the defense's opportunity to use the evidence when disclosure is made." Id. (citing United States ex rel. Lucas v. Regan, 503 F.2d 1, 3 n.1 [2d Cir. 1974]). Thus, no Brady violation occurs where Brady material is disclosed in time for its effective use at trial. Cheng v. Greiner, No. 02 Civ. 4804, 2003 U.S. Dist. LEXIS 21286 at *18 (S.D.N.Y. Nov. 25, 2003) (citing United States v. Coppa, 267 F.3d 132, 142 [2d Cir. 2001]).

When the issue is whether the defendant was prejudiced by late disclosure of Brady material, a new trial is required only

when the defendant was deprived of a meaningful opportunity to use the material. Stevens v. Miller, No. 96-CV-1626 (NAM/CLS), 1999 U.S. Dist. LEXIS 23075 at *17 (N.D.N.Y. Mar. 5, 1999); Freeman v. Kuhlman, No. 96 CV 3749, 1998 U.S. Dist. LEXIS 14891 at *8 (E.D.N.Y. Aug. 3, 1998) (citing People v. Cortijo, 70 N.Y.2d 868, 870, 523 N.Y.S.2d 463, 464 [1987]).

A petitioner need not show by a preponderance of the evidence that timely disclosure of the evidence would have ultimately resulted in his acquittal. See Kyles v. Whitley, 514 U.S. at 434. However, to establish a Brady violation, a petitioner must show prejudice. See United States v. Gil, 297 F.3d at 101 (citing Strickler v. Greene, 527 U.S. 263, 281-82 [1999]). Reversal is warranted if the undisclosed evidence is "material," meaning that there is a "reasonable probability" that had the evidence been disclosed to the defense, the result of the proceeding would have been different. Kyles v. Whitley 514 U.S. at 434; see Tankleff v. Senkowski, 135 F.3d 235, 250 (2d Cir. 1998). A "reasonable probability" of a different result is shown when "the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" Id. (quoting United States v. Bagley, 473 U.S. at 678); Payne, 63 F.3d at 1209.

Thus, in order to establish a Brady violation, a defendant must show that the evidence at issue is favorable to the accused, either because it is exculpatory, or because it is impeaching, that the evidence was suppressed by the State, either willfully or inadvertently, and that prejudice ensued. See Strickler v. Greene, 527 U.S. 263, 281-82 (1999); United Sates v. Paulino, 445 F.3d 211, 224 (2d Cir. 2006).

Furthermore, evidence is not "suppressed" within the meaning of Brady if either the defendant or his attorney "either knew, or should have known, of the essential facts permitting him to take advantage of [that] evidence." United States v. Zackson, 6 F.3d 911, 918 (2d Cir. 1993) (quoting United States v. LeRoy, 687 F.2d 610, 618 {2d Cir. 1982], cert. denied, 459 U.S. 1174 [1984]); see also United States v. Paulino, 445 F.3d at 224-25; Payne, 63 F.3d at 1208.

Because the Appellate Division adjudicated defendant's Brady claim on the merits in an alternative holding, the deferential standard of 28 U.S.C. § 2254(d) under AEDPA applies to review of defendant's claim. See Point I, supra, at 7-8. Here, the Appellate Division's rejection of defendant's claim was not contrary to, and did not involve an unreasonable application of, Supreme Court precedent. See 28 U.S.C. § 2254(d)(1). Nor did it involve an unreasonable application of

the facts based on the evidence presented. See 28 U.S.C. § 2254(d)(2).

As the Appellate Division concluded, Gardner, 12 A.D.2d at 526, 785 N.Y.S.2d at 462, defendant was given the police report of Hill's statement prior to opening statements (3-4, 76-78). Defendant made meaningful use of the police report throughout the trial. In the report of Hill's statement given to the police on January 3, 2001 at 4:15 a.m., at the 73rd Precinct, Anastasia Hill named "Millie-Moe" as the shooter. The detective who took the statement did not know who Millie-Moe was (Palmeri: 319), and the prosecutor did not either (78). However, Millie-Moe was the nickname of defendant's brother (Allen: 247-48, 260-61; Hill: 275), a fact that would have been known to defendant. After the police report of Hill's statement had been disclosed, the court ruled that either Hill was to be brought in for the defense, or the court would allow the defense to introduce the police report (79, 82-83).

On March 20, 2002, the prosecutor stated that he would try to bring Hill to court (117-19). On March 21, 2002, Hill was produced (122), defense counsel availed himself of the opportunity to interview her (246), and defense counsel vigorously cross-examined her when she testified (294-306). At trial, Hill recanted her statement to Detective Palmeri that the

man in the tan jacket with a fur collar who had shot Byron Wynn was Millie-Moe. According to Hill, she had said to Detective Palmeri that she had seen defendant talking to Millie-Moe earlier in the day (Hill: 292). The detectives had woken her up out of her sleep to come down to the precinct to talk to them (Hill: 290). Hill testified that she felt pressured by Detective Palmeri to sign her statement and felt that "the quicker I signed the paper the quicker I get out of here" (Hill: 293). She admitted that she was uncooperative and did not want to be there (Hill: 290-91). Detective Palmeri confirmed at trial that Hill "didn't want to talk to us . . . didn't want to be there, didn't want to tell us what happened" (Palmeri: 320).

Defense counsel made extensive use of the police report in his cross-examination of Hill. She testified on cross-examination that she had recanted the statement in the police report the day before her testimony during a conversation with the prosecutor (Hill: 301). Defense counsel pointed to defendant in open court and asked Hill if defendant was Millie-Moe (294-95). Hill said that defendant was not Millie-Moe (Hill: 294). Hill acknowledged under cross-examination that she had signed the statement to the police over a year earlier, close to the time of the shooting (Hill: 296-97, 299-300, 302).

Defense counsel also used the police report in cross-examining Detective Palmeri, eliciting the contents of the police report and Palmeri's acknowledgement that Hill had voluntarily signed the report, had read the statement, and had not made any corrections when given the opportunity to do so (Palmeri: 336-42). Defense counsel also made ample use of the police report in summation, reminding the jury that Hill's statement to Detective Palmeri was contemporaneous with the shooting (377-79, 381). Defense counsel also argued that the police had not found Millie-Moe, and that the People had not established beyond a reasonable doubt that Jermaine Gardner was the shooter (379, 381-82).

Furthermore, earlier disclosure of Hill's statement to Detective Palmeri would not have affected the outcome of the proceedings. The prosecution presented very compelling identification of testimony by Magic Allen, who saw Wynn being shot as she looked out her apartment window. Allen got a good look at defendant's face when he ran toward her building (Allen: 201-06). Allen had heard two gunshots when she saw Wynn and defendant talking on the walkway, and she saw a black handgun in defendant's right hand as he ran towards her building after the gunfire (Allen: 199, 201). Moreover, Allen had known Millie-Moe, defendant's brother, since she was ten years old, and there

was little chance that she would have confused defendant and his brother (Allen: 248-49, 260-61).

Under all these circumstances, defense counsel had a meaningful opportunity to make effective use of Hill's statement to the police, and no Brady violation occurred. The Appellate Division's decision rejecting defendant's Brady claim was not contrary to, and did not involve an unreasonable application of, Supreme Court precedent. See 28 U.S.C. § 2254(d)(1); Gardner, 12 A.D.3d at 526, 785 N.Y.S.2d at 463 (finding that defendant received the Brady material before opening statements, and that defendant used it in meaningful fashion during cross-examination of the People's witnesses or as evidence during his case). For these reasons, and for the reasons stated in respondent's Appellate Division Brief (Respondent's Exhibit C) at Point II, defendant's Brady claim should be rejected.

In sum, defendant's claim is procedurally barred, and in any event, the state court's rejection of defendant's claim was not contrary to, and did not involve an unreasonable application of, federal constitutional law. Therefore, defendant's claim does not warrant federal habeas relief.

## CONCLUSION

FOR THE AFOREMENTIONED REASONS, DEFENDANT'S PETITION FOR A WRIT OF HABEAS CORPUS SHOULD BE DENIED.

Dated: Brooklyn, New York
August 4, 2006

Respectfully submitted,

CHARLES J. HYNES
District Attorney
Kings County

LEONARD JOBLOVE
CAMILLE O'HARA GILLESPIE
MARIE-CLAUDE P. WRENN
Assistant District Attorneys
of Counsel

Certificate of Service

I hereby certify that on August 4th, 2006, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on electronic Service upon the following party.

Jermaine Gardner
02-A-3319
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562-5442

Marie-Claude P. Wrenn
Assistant District Attorney
Office of the Kings County
District Attorney

350 Jay Street
Brooklyn, New York 11201
(718) 250-2530

RESPONDENT'S EXHIBIT D

<u>Jermaine Gardner v. Brian Fisher, Superintendent of Sing Sing Correctional Facility</u>

05 CVB 6096 (NG) (JMA)

(Kings Co. Indictment No. 763/2001)